Council, may it please the court. My name is Curt Nailer. I represent Dale Rogers, Detective Dale Rogers in Boise City, Boise City. I'd like to reserve five minutes. We seek this court's reversal of the denial of qualified immunity for Dale Rogers on the pre- and post-notice deprivations claimed by the lower court that Eric Mueller held. And on remand, reversal of the summary judgment granted to Eric Mueller on the pre- and the post-notices for the same reason with qualified immunity having been found. Qualified immunity is found if there is a constitutional right that was violated, but if that right still was not clearly established, and a reasonable law enforcement officer would have deemed their conduct to be appropriate under the circumstances, then there would be qualified immunity for Detective Rogers. In this case, looking at the pre-notice that was claimed, that Eric Mueller had a notice before the finding of imminent danger, we argue that there is no such constitutional right for the seizure of a child when imminent danger has been declared by the law enforcement officer. It makes no practical sense, and the imminent danger finding would eliminate any need for a pre-notice right. Well, the district court seems to have split some interesting hairs on this. And the way I read what the district court did, the district court said that he was entitled to a pre-deprivation notice while the officer was considering, so that I guess the parent's view could be taken into consideration in the decision as to whether there was an imminent danger and what to do. And Judge Trott, that was not a constitutional right, and even if it was, it wasn't clearly established. But isn't that what the district court said? It's during the consideration process that he was entitled to a notice. Is that what the district court said? Yes, yes, which is impracticality because at differing times, the officer making the determination of imminent danger may vacillate between finding imminent danger or not finding imminent danger. And so the question arises, at what point should a potential parent whose child is going to be potentially taken into imminent danger notify? I suppose that the issue is pre-deprivation notice of what and for what. That is, is the due process right itself one that the absent parent gets an opportunity to argue with the decision maker, or the absent parent gets a right to know the decision has been made so that the absent parent can then do what he or she thinks should be done? Did the district court make that differentiation as to what the Constitution requires? That is, pre-deposition, the pre-deprivation must be for a purpose. Is it so they can argue with the police officer, or is it so they can know what the police officer did? Judge Wallace, I believe that the court was ambiguous at best as to what that pre-deprivation notice was intended to provide. As Judge Trott pointed out, it was that the law enforcement officer was considering imminent danger. What's your view? What does the pre-deprivation notice require? Under the Constitution, they have a right to argue with the officer before he makes a decision? No, Your Honor. With all due respect, I don't believe that there is a Constitutional right to a pre-deprivation notice to a parent. In what case do you rely on for that? Well, Your Honor, we were unable to locate any case that stated that there was a pre-deprivation notice, and the lower court did not cite any case in its finding that there was. But as you consider all of the cases, especially even the Wallace case, in considering imminent danger, what the police officer is doing is considering all the factors at his disposal. Now, whether a parent is present under a circumstance where there's a denial of medical treatment, then obviously that officer will consider what that parent has to say. But an absent parent is not necessary to be interviewed by the police officer in determining the imminent danger. I see your argument. It's just I never read a case that made that differentiation. Is there one? After 200 years, we get to say something new about the Constitution? I believe that the case law, even Wallace and all the imminent danger cases, make that argument. So I believe what's happening here with the lower court was an expansion of a Constitutional right and a new declaration that isn't well-founded on precedent. And I believe that in these kinds of situations with medical urgency or imminent danger being present, that a law enforcement officer, where time is a critical element, the medical needs of the child are imminent, and the treatment has to be decided by the police officer based upon all of the information presented to him, that in that case, the law enforcement officer, we can't with 20-20 hindsight look at qualified immunity and say he should have, would have, could have called Eric Mueller or what have you, because it was his understanding he was in a short window of time in order to make this decision. Are you asking us to assume as a factual predicate for what you're asking us to do that the child was in imminent danger? I believe I can't ask this court specifically to do that because the court below found a question of fact. But for that very reason, because there's a question of fact on imminent danger, it does not logically follow that the police officer's conduct, that he can be found unconstitutional in not providing a pre-deprivation notice when there's already a question of fact as to imminent danger. Because if there is imminent danger found, then the father would not have a right to pre-deprivation notice any more likely, because at that point, the case is decided that he cannot take the child. But you're in the qualified immunity box, and the Supreme Court has told us under saucier or saucier, the first thing we have to do is find the right. But the way it seems to me that you're expressing the right assumes imminent danger. No, because, well, it assumes whether or not imminent danger has been determined. In this case, if imminent danger had been found in this case by the court below, then clearly Eric Miller would not have a right to a pre-deprivation notice. But it hasn't been. Exactly, and so for that reason, to find that the constitutional right was violated is illogical and does not follow. Well, don't we have to take a look at the constitutional right from the standpoint of no danger? And is there a right to pre-deprivation notice so that the officer can confer with the other parent? For the purposes of making the decision, as the district court said, this is a time when they were considering whether to take these steps. And with all due respect, there isn't any case law that says that a non-present parent in a medical situation such as this has a constitutional right to be consulted. So all of that goes into the rubric of what did the police officer have at his hands, reasonable police officer, in investigating to determine whether imminent danger existed. So the argument really goes to was it part of his responsibility to determine imminent danger to contact the non-present father? Given all these questions of fact that we have, and given that the district court denied the summary judgment, why is it in front of us? What jurisdiction do we have? I mean, it seems to me that we have a question of fact here, a question of fact that you and we're trying to put this in a rubric where we're trying to determine exactly what it is that they have and exactly what it is they don't. And then we're trying to say, but the facts don't see it. Why do we have any jurisdiction in this at all? Why doesn't it just go to, why don't you have to go to trial? Why are you in front of us? I mean, on summary judgments, I loved it when I was on the district court, as you well know. If I denied the summary judgment, I had a trial. And Judge Smith, because of the fact that qualified immunity was denied to Detective Rogers, that is the interlocutory appellate jurisdiction that we have today. Well, I understand that there's an interlocutory appellate jurisdiction, but it seems to me that then we have to determine what the facts are at the best place that could possibly be had for the plaintiff to determine where to get to. And I guess my worry is that on this record, I don't know exactly what those facts are. That's what Judge Trott's question was. But we do know the law and, frankly, what the law wasn't established at the time of this finding of imminent danger. And that is what we're asking this court to determine, that there was no constitutional right that was violated, which is the first step of Saussure and Billington. And the second is that a reasonable police officer under these circumstances, even if there was a constitutional violation, acted reasonably under the circumstances and qualified immunity provided. It seems to me we have to assume there was no imminent danger and no emergency and then determine what the right might have been based on the cases that come before under those circumstances. Because, as Judge Smith points out, the question of whether there was an emergency or imminent danger is still up in the air factual. So for our purposes, it seems to me we have to assume there wasn't any imminent danger or emergency yet, and we simply have to take it from there. So then it seems to me that we jump from the first step, the Saussure inquiry, to the second step. Then we have to determine under those circumstances whether a reasonable officer would have known that he, in this case, had to provide notice to the absent parent. With all due respect, I think you still have the first prong of Saussure to work on, and that is that there was a constitutional right to pre-deprivation notice. Well, don't the Supreme Court cases and Wallace suggest that there is, that there's no emergency? I mean, all the cases say parents have these rights unless there's an emergency. If we start from the proposition that we don't yet have an emergency established, then that right exists. So we move to stage two. Would a reasonable officer have known that he had to notify both parents, not just the mother? Is that where we are? That is where we are, and with the question of fact, the fact that the judge found summary judgment in favor of Eric Mueller and against the officer should be reversed. I'd like to reserve my remaining three minutes. Thanks, Judge. Thank you. Mr. Rossman, sorry that I was a little bit off and didn't say both counts were right at first and got you all excited that you had to come first. I called worse than a talent. May it please the Court. In my limited time this morning, I'd like to address three issues. First, I'd like to more clearly identify the nature of the ruling of the court below. Second, I'd like to identify the nature of the advisory opinion that Detective Rogers is asking you to issue today. And third, I'd like to identify the principles of the Wallace case established, clearly established, and that are relevant to this case. The court below held that Rogers violated the Constitution by removing Eric Mueller's parental rights without even calling him. The court gave some reasons why this violated the Constitution. Rogers had to call Eric Mueller, not simply to give him notice, but to get information. What kind of information? Well, to determine, for example, whether Eric would consent to the procedures that were in dispute, to determine whether he could convince his wife to consent, to determine whether or not his daughter, whether his family had been suffering the cold that his wife had said. You're making the argument, I take it, that he has a right to argue with the police officer over the decision. No, Your Honor. What he has the right to do, the officer's obligation in the second part of the Wallace test is to determine whether or not it was reasonably necessary to remove the Mueller's rights, and specifically Eric Mueller's rights, in order to remove whatever imminent danger may have been lurking over Katie. So the officer has to start exploring whether or not somebody in the family has had a cold? He has to make a reasonable investigation. Well, there were parents. I assume they were parents. They were married, and the father stayed home because there's another child, and the wife goes down. Surely the wife would have the opportunity of giving all the information which is necessary, and indeed, under the facts of this case, I suppose it isn't out of line to say that she would. He had given her the right to do it. You take the child to the hospital, and I'll stay here. Under those circumstances, why is it reasonable to believe that every police officer has to check with an absent husband at home when he has the wife there to talk to? Where does that fit in? Is there an independent right, and if so, on what case do you base it? I rely on the Wallace case, Judge Wallace. Wallace case says that each parent's rights have to be separately assessed. One piece of the case. I'm sorry, Judge Schreier. The Wallace case seems to me to be easily distinguishable. The setting and circumstances of the Wallace case are much different from the case that's before us. Well, the principle that was established in Wallace was that the officers must make a reasonable investigation. They must separately assess each parent's rights and that a parent's rights cannot be taken away simply because of the conduct of another parent. Where they confront in Wallace, however, the specific issue of whether once the mother at the hospital has been involved in this, almost delegated this responsibility, nevertheless you have to call the father. Where is the language in Wallace such that a reasonable officer, and I know there's some fiction to this, would understand that you have to talk to both parents? Precisely point to me the language in Wallace that gets specific enough so that a reasonable officer would understand that is, in this case, his obligation. I don't have the case in front of me, but I remember footnote 14 specifically identified the obligation of each of the officers. Where is it, footnote 14? Of the Wallace case, yes, Your Honor. I'll be happy to look at it. It's a very seminal issue hidden down in footnote 14. Well, it wasn't only in footnote 14. And if I may, Your Honor, the other – Judge Wallace is on to an important point. We're requiring police officers at their jeopardy to make decisions, and they ought to have reasonable notice. I mean, the hallmark of due process in a larger sense is reasonable notice. And you tell me that it's in footnote 14 buried in a case someplace. I mean, that gets awfully difficult for me to believe, even with fiction, that it's enough of a warning to police officers, you have to tell – talk to both. Your Honor, if you want me to wait a moment, I'll give you other page types in the Wallace case. But the Wallace case, and it's in our brief, clearly established that you have to separately assess and that the conduct of one parent can't justify an officer's removal of another parent's rights. Let me ask you a question to begin with, which I would have done with my good colleagues, started with a couple of good questions. I read your Second Amendment complaint. Your Second Amendment complaint says that Eric's due process rights were violated by failing to allow Eric to be with his daughter when she received the medical treatment. Where in this Second Amendment complaint do you make the argument you're now making? That – I'm sorry? That there's somehow a violation of his rights because he didn't get notice. As I read your Second Amendment complaint, the only due process right you thought he had was that he ought to be able to be with his daughter while she received the medical treatment. That was just one of many due process rights, Your Honor. Well, if you look at your Second – Second Amendment – I'm getting the Second Amendment complaint out. Thank you. And then, after you get to that, and I guess you need to think about that, but when you get to that, I'm like Judge Trout. When I read Wallace and Ben Emmerich, upon which Wallace was based, these were children which were removed from their parents and their homes in an effort to determine whether they would be victims of abuse. Now, in this case, we don't have people going to their parents and their homes. We have a detective at a hospital with the mother there who removed only the child from the mother's immediate custody because of a concern that she needed a life-saving medical procedure. Where is there – this is not an investigative function of the Fourth Amendment – where is there a case that gets me to the point that with the mother sitting right there – and I think footnote 14 is the only place there is in the case that you can look at where Wallace talks about this – where do I find the case that you're getting to? I really do think Wallace suggests, Your Honor, that there's a separate assessment, and if I may, Judge Smith, Wallace also says that parents have the right to be with their child during medical treatment. And – Well, but that isn't up in front of us. Well, I believe it is. The district court has not issued a rule about that. Excuse me? I don't think that the district court came down on that. They had something to say about that. But the issue which we're really talking about now is the pre-deprivation notice. The court below held both the words pre-deprivation and post-deprivation notice. But the one I've got is the pre-deprivation notice. Fine, Your Honor. And I think, Your Honor, the answer to that question is in Wallace. I think it repeatedly says it. How difficult would it have been for Detective Rogers to pick up a phone and determine whether Eric Mueller would consent to the procedures that Dr. McDonald was requesting? It would have taken a minute. It would have taken just one minute, and he could have separately assessed whether it was necessary to remove Eric Mueller's rights. Well, walk me through this. So the officer calls the husband. What's the scenario we're going to get? What is the scenario? Dr. Rogers calls the husband. What happens? Hello, this is Rogers. What is he supposed to say? He's supposed to tell him the situation and that his wife has not consented to procedures and that he's thinking and he may declare the child an imminent danger and he wants to know whether or not Eric Mueller will consent to the procedures. So he asked if constitution requires that he ask now Eric Mueller. Eric Mueller says, I consent. Yes. The mother at the hospital has said, I don't. Now what? I think the doctor can go ahead. One parent is all that's needed. Your Honor, one parent is all that's needed? Well, the wife has already consented. I mean, this begins to sound like pre-Reed v. Reed where the husband gets to control the decision-making. No, Your Honor. The wife has not consented in the situation in our case. To the examination? To the examination. The wife consented to many things. She didn't consent to prophylactic antibiotics or a diagnostic. She consented to the examination. It's just after the examination she didn't consent to treatment. Right. Well, the examination was a ruse in order to remove the child from her possession. That was a ruse. He made a finding that that examination was a ruse. No, but I think it's a reasonable inference to draw from the evidence. It's interesting we're drawing so many from summary judgments. I understand that summary judgment, the facts are all set before the Court and were just an issue of law. It seems to me that I have to make a determination. A police officer knowingly and wantonly created a ruse through a physical examination that the doctor said was necessary, and he's – and you've got all of this ruse conduct. I think that would have to go back. I don't – if your case depends upon that, there's nothing in the record upon which this is an issue of law, is there? I – well, I'm not the one that's appealed, Your Honor, I might add. You're not the one that's what? I haven't appealed. The facts that you're supposed to take into account in determining whether or not qualified immunity was rightly denied are the facts most favorable to the nonmoving party, which in this case is my client. Do I understand correctly that it's your position that you want it to go back? Excuse me? You would just assume that we would reverse this and send it back? No, we would like you to affirm the judgment of the court. Let me go to – So, but your argument is the husband says, okay, go ahead and do the spinal tap, but the mother has said, no, don't. The fact that the father has said okay is enough. Yes, it is. Let me go to my – the second point. What if the roles were reversed? If the father was at the hospital and said no, and the mother was at home, then the mother could say – I mean, it works both ways? Yes. One parent and their Idaho law is all that's needed. If I may, Your Honor, I would like to get to the second point, because I think it addresses some of the questions you asked Mr. Naylor, which is the fact that Mr. Naylor is asking you for an advisory opinion. Throughout his brief, he says there is no of these notice rights in an imminent danger situation, and he said it again several times today. He says there are inconsistencies between parts of the opinion of the court below in which qualified immunity was granted and the opinion – part of the opinion that's on appeal here. He also says you cannot review the question of whether or not Detective Rogers was entitled to qualified immunity for certain things, and you can't review the parts of the opinion that went in his favor in the court below. Page 36 of his brief. Any right Eric had to pre-deprivation due process is tied to whether Rogers' declaration of imminent danger was reasonable. So you have to assume that there was an imminent danger situation, and then – No, no, we don't. That's yet a fact that they decided. Your Honor, if you don't assume that there was an imminent danger situation, then I win, because – No, you don't. The question is whether a reasonable officer would understand he has to notify both parents, an absent parent under these circumstances. In the absence – You may lose on the second problem, even if we agree with your articulation of the right at issue. It seems to be still at play whether a reasonable officer would appreciate that under these circumstances. Your Honor, in the absence of imminent danger, and if Wallace doesn't make this clear, it doesn't make anything clear. In the absence of imminent danger, there's no right for the police to interfere with any parent. So you're going to win or lose based on our reading of Wallace. Excuse me? You're going to win or lose based on our reading of Wallace. Well, I think that's right. I think Wallace is the controlling case. And what Wallace makes absolutely clear is that in the absence of imminent danger, then parents have their ultimate determination or a judge in the case in which there's something less than imminent danger. But, of course, there was no judge here. It was just a police officer making this determination. And in the absence of imminent danger, the Mueller's rights were clearly violated. What about the post-deprivation claim? He was called at 3 o'clock in the morning, 3 a.m. Why isn't that sufficient for post-deprivation notice? Because he was unable to meet the right. Wallace gives him a right to be with his child during the period of time that procedures are taking place. By the way, it's not clear from the record that he was told that procedures were going to take place at that call. But be that as it may, Wallace gives him the right to be there with his child at 3 o'clock. It was already too late. The procedures had started, and they were pretty much over by 3.30. But that's pre-deposition notice. Post-deposition notice is after the fact. Yes, Your Honor. So the question is, being called at 3 a.m. in the morning saying this has happened, why isn't that post-deprivation notice? I think that was the question. That's right, post. Well, I think the idea was that he was deprived of his right to be with his child during the medical procedure. That's the pre-deposition notice problem, not post. I think notice in either before or after, Detective Rogers. So you're telling us he was going to run down to the hospital at 3 a.m. under these circumstances? If he was called at 1.45, he might have, yes. But that's pre-deposition. You're not answering the question. We're not making it clear, I'm sure. We understand your argument on pre-deposition notice. He had a right to be with his child. He has to have notice to be with his child. After the effect, they've already done the test. The question is post-deprivation notice. That is, the notice to do something about what's already taken place. Your Honor, it's the same thing. Because the right is the right to be with your child. If it happens. After it happened. After Detective Rogers separated the mother and the child. After the tests have been run. Then he's entitled to post-deprivation. That's not what the court below is talking about. So you're saying instantaneously, the first pre-deprivation is before while he's considering the decision. Then you're saying it should have followed his night to day immediately after he made the decision. Okay, I've made the decision. Then he should notify him at that moment. Is that what your argument is? Sure. Shortly thereafter so that he could be with his child. And for that reason, it's clear that the post-deprivation rights notice of the court below is correct. And we ask that you affirm it. Thank you for your argument. You have some more time. Thank you, Mr. Court. Judge Smith, I agree that the right on the pre-notice was not pled in the underlying complaint. But Judge Windmill found it beyond anything that was argued in the motions for summary judgment. That goes back to my earlier argument that I don't believe that this pre-notice is a constitutional right that makes sense in a situation whether you deem imminent danger to be found or not. Did counsel ever move to amend to make such a good argument? No. Once they won on summary judgment, I don't believe they felt they needed to. One point that I think Judge Trott brought up is the impracticalities of this post-notice to Eric Mueller. For example, Eric Mueller, the record is clear. It's undisputed that Eric Mueller, once he was called and contacted that the child had been taken into imminent danger and medical treatment was nigh on hand, didn't rush down to the hospital. He had a toddler, so he had to get a babysitter. But the first thing he did was picked up the phone and contacted a lawyer. So it seems that the right to be present wasn't that established for him in his own mind. And the other point is with this post-notice, at the point Detective Rogers takes the child in imminent danger, he then immediately transfers custody to the Department of Health and Welfare, who then proceeds with they attempted to get consent, and then they proceeded with the medical treatment. And then the Department of Health and Welfare, as the custodian, gave the consent to the hospital in order for the treatment to proceed. So at the point imminent danger has taken place and custody is transferred to the Department of Health and Welfare, it is clear that Detective Rogers had no involvement or right or obligation to contact Eric Mueller and say, this is what I just did. Because if the right, as our counsel is arguing, was for Mr. Mueller to be present during the medical treatment, that was a right or an obligation that only the Department of Health and Welfare had the authority to provide him. What counsel has really argued is, with 20-20 hindsight, it would have been really easy to pick up the phone and call Eric Mueller. But we don't know what Eric Mueller would have said, and the 20-20 hindsight quarterbacking is exactly what the courts have well established qualified immunity is not about. Detective Rogers acted reasonably under the circumstances based upon the case law present, and reading a footnote and considering whether one parent or both parents have to be talked to is more a determination of whether he had reasonable belief to believe the child was in imminent danger, which we believe he did. And I thank you very much for your argument. Can I ask a question? I'm a little perplexed about this case. Assuming we agree with you and we send it back because we believe that a further determination needs to be made on the summary judgment on qualified immunity, hasn't the district court already entered summary judgment in favor of the husband? Correct, on both the pre and the post. So that determination has already been made as far as the constitutional issue is concerned. My question to you, is that issue before us? Yes, because by extension it makes no logical sense to find that there is no constitutional right and yet allow the court to enter the summary judgment that it was violated. We have before us jurisdiction based upon the determination against the police officer of qualified immunity. That's all we really have. There's no final judgment yet. And so that's all we have. What your argument is that because the two issues are, quote, intertwined, close quote, which a term we've picked up that is relatively meaningless but difficult to apply. Because of that, we have before us an issue which is not ordinarily we have no power to decide. And there's one case that has some language that could benefit you on that. But has it ever been specifically decided that automatically through qualified immunity jurisdiction we pick up any other issue in the case upon which any issue relies? Not that I can speak to at this point. But at the very least, I think what this court can do is grant qualified immunity, finding that there was no constitutional violation or that no constitutional violation existed, and order the court on remand to consider that determination of the summary judgment entered on behalf of Eric Mueller based to be consistent with this court's legal ruling. I suspect that that's what you're getting to. You want to undo the other summary judgment, too. My concern is that we have a district court judge that can add two and two. And when we make this determination, he's going to have to relook at his summary judgment. What you want us to do is include it in our decision. Yes, just simply to instruct him to do that. But in order to do that, wouldn't we have to say there is jurisdiction, we have jurisdiction to make that decision, that direction? No, Your Honor. With all due respect, I don't think you're making the decision. You're just making the constitutional determination and instructing the court to consider what this court says. Sort of. Put it in footnote 14. And then invite him to read it.  Thank you. Thank you very much. Appreciate your arguments. Case 0735554, Mueller v. Rogers is now submitted.
judges: Wallace, Trott, Smith